IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEENA BRADSHER** : | |
|     **Plaintiff,** : | |
| : | CIVIL ACTION NO. 04-3309 |
| **v.** : | |
| : | |
| **CITY OF PHILADELPHIA POLICE** : | |
| **DEPARTMENT** : | |
|     **Defendant**. : | |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                                                         **September 18, 2007**

Presently before the Court are Defendant's Motion for Summary Judgment (Doc. 9) and Plaintiff's Response (Docs. 11, 12). For the reasons set forth below, upon consideration of the Motion and response thereto, this Court will grant Defendant's Motion.

**I.  BACKGROUND**

From the evidence of record, taken in a light most favorable to the Plaintiff, the pertinent facts are as follows. Plaintiff brings this action for retaliation, interference, and illegal policy pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

Plaintiff states that she was employed as a police officer on October 6, 1997. On January 24, 2001, Plaintiff was an eligible employee under the FMLA in that she worked for the Defendant for at least twelve months and for at least 1,250 hours during the preceding twelve months. Between September and October 2003, Plaintiff was intermittently out on sick leave for stated medical reasons.

From January 2003 to October 7, 2003, Plaintiff was absent for forty-nine days, and reportedly violated Defendant's sick leave policy fifteen times. Plaintiff was absent fifteen days between September 12, 3003 and October 7, 2003, and reportedly violated the sick leave policy

twelve times. Sections V (F), (G), (H), and (I) of Defendant's sick leave policy required Plaintiff to remain at home throughout the duration of her leave for "sick checks," and to notify her unit prior to leaving home for any reason. As of January 24, 2003, Plaintiff was aware that her supervisor was conducting physical sick checks of her (Def.'s Mem. L. 3); Bradsher was aware that she could be terminated if she failed a sick check on more than four occasions in a one-year period. (Pl.'s Br. Opp. to Summ. J. 12.) Bradsher was also aware that the entryway/intercom buzzer system at her residence was not functioning properly while she was being sick-checked between September 24, 2003 and October 8, 2003, and she informed supervisors of this fact. (Pl.'s Br. 4.)

On October 8, 2003, Plaintiff was notified of nine (9) purported violations of Defendant's sick leave policy when a "physical sick check" indicated that she was not at home while on sick leave. Defendant notified Plaintiff that she could be terminated for these alleged violations. In January 2004, Plaintiff was suspended for forty-three days without pay and with "intent to dismiss." On or about February 24, 2004, Plaintiff alleges that she was constructively discharged when she resigned from employment with Defendant in order to collect her pension. She claims that her suspension and constructive discharge from employment were in retaliation for her taking FMLA leave.

Plaintiff states that by enforcing the above sections of Defendant's sick leave policy, Defendant violated the FMLA because said sections interfere with Plaintiff's substantive rights to take leave, to be entitled to take leave, to be restored to her former position after leave, and to be free from retaliation and harassment for taking leave. Moreover, Plaintiff alleges that these sections illegally conflict with the FMLA's anti-abuse provisions.

Defendant denies that it is liable to Plaintiff on her FMLA claims and seeks dismissal of

Plaintiff's entire Complaint with prejudice. This Court agrees.

A.   **Defendant's Sick Leave Policy**

Pursuant to the City of Philadelphia Police Department's sick leave policy, Directive 66, if an employee of the Police Department ("PPD") calls out sick from work, and is either on the Excessive Use of Sick Leave List, or has less than 1200 hours of accumulated sick leave, the employee will be subject to visits and/or telephone calls between the hours of 7:00 a.m. and 1:00 a.m. by a sick leave investigator and supervisory personnel of the PPD. Employees must remain at their residences or place of sick confinement until returning to duty. If an employee leaves her place of confinement, she must notify her district prior to departure from and when returning to her place of confinement. If an employee is not home when she is sick checked, the employee is subject to disciplinary action.

Plaintiff was familiar with Directive 66 and the PPD's policy regarding sick checking employees. Further, Plaintiff knew that her accumulated sick leave time was very low, and she was notified in writing in 2001 that she was using too much non-certified sick leave. Plaintiff was also informed in 2002 that she used too many sick days. Thus, Plaintiff knew that she would be sick checked at home.

On January 24, 2003, Plaintiff was notified that she failed a physical sick check on January 14, 2003, and was being issued a written warning. Plaintiff also failed sick checks on January 16, 2003, and April 25, 2003. Plaintiff was issued a written warning for the January 16, 2003 violation and a one day suspension for the April 25, 2003, violation. According to Plaintiff, as of January 24, 2003, she knew that her supervisor was conducting physical checks on her.

On May 2, 2003, Plaintiff was notified that she had used a total of thirteen (13) non-

certified sick days during the calendar year. On July 28, 2003, Plaintiff was placed on the Excessive Use of Sick Leave list. From January 2003 through September 2003, Plaintiff called out sick on thirty-four (34) occasions, but only had enough sick leave to be paid for nine (9) of those occasions. The remaining occasions were taken as unpaid sick leave. Moreover, during this period, Plaintiff was extensively checked. On six occasions, Plaintiff was home and signed the sick check forms.

B.     **Plaintiff's Medical Absences**

On September 30, 2003, Plaintiff was admitted to Jeanes Hospital emergency room for treatment of an ovarian cyst. Later, she told a supervisor that she would probably "need a FMLA" and that she "may need surgery" and she may want to take an FMLA if time permitted. Although Plaintiff never definitively stated that she would require surgery, she ultimately did not have surgery, and may not have formally requested FMLA leave, the Court will accept as fact for purposes of this analysis Plaintiff's contention that she was on FMLA leave between September 12, 2003 and October 7, 2003. (Pl.'s. Br. 7.)

Plaintiff returned to work on October 7, 2003, and was placed on restricted duty in the GRIPP unit. On November 5, 2003, Plaintiff failed a physical sick check ordered by Lieutenant James Figorski. On November 12, 2003, Plaintiff failed to appear at work and failed to call in sick. Plaintiff was suspended for three (3) days commencing on January 10, 2004; ten (10) days commencing January 15, 2004; and thirty (30) days commencing February 1, 2004. Plaintiff was suspended for failing physical sick checks on January 16, 2003, April 25, 2003, October 5, 2003, October 6, 2003, and November 5, 2003.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing

party.  <u>Anderson</u>, 477 U.S. at 255.

### III.  DISCUSSION

**A.     Rights Under the FMLA**

FMLA entitles eligible employees to twelve (12) weeks of unpaid leave during any twelve (12) month period for certain family reasons and any "serious health condition" that makes the employee unable to perform the duties of her position.  Employers may not deny or interfere with an employee's rights guaranteed by the FMLA and are prohibited from discharging or discriminating against any eligible employee who exercises those rights.

Courts recognize two causes of action under the FMLA.  First, it is unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right secured by the Act.  Claims pursuant to this provision are referred to as "interference claims." Interference claims are not about discrimination, the issue is simply whether the employer provided its employee the entitlements set forth in the FMLA.

The second cause of action recognized under the FMLA is for retaliation.  The Act states that it is unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  In sum, an employer cannot discriminate against an employee who has taken FMLA leave. To establish a prima facie case of retaliation, the Plaintiff must show: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  Thereafter, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse action.  The burden then shift back to the Plaintiff to show that the stated reason of the Defendant is a pretext.

Defendant argues that Plaintiff was suspended pursuant to the provisions of Directive 66,

which provides for progressive discipline, including dismissal, for employees who fail a physical sick check.  Plaintiff violated the PPD sick leave policy on numerous occasions, and was given written warnings and suspensions for her violations.  Defendant's policy is applied to all employees, regardless of whether they exercise their rights under the FMLA.

Further, Defendant claims that Plaintiff is unable to show that she was constructively discharged.  To show constructive discharge, the Plaintiff must show that "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign."  In this case, the Court agrees that Plaintiff has not shown that what occurred would cause a reasonable person to resign.  Plaintiff was suspended pursuant to the provisions of Directive 66, which applies to all 7,000 employees of the PPD who have not all resigned as a result of Directive 66 suspensions.  Thus, the facts do not support a finding of constructive discharge.

Because Defendant's sick leave policy does not violate the FMLA, Plaintiff's entire set of claims must fail.

**B.     Defendant's Sick Leave Policy and the FMLA**

In <u>Callison v. City of Philadelphia</u>, 430 F. 3d 117, 121 (3d Cir. 2005), the Third Circuit affirmed the District Court ruling that the City's sick leave policy requiring employees to be subject to sick checks neither conflicts with nor diminishes the protections guaranteed by the FMLA, and the sick leave policy is not invalidated by the Act.  In affirming the trial court's ruling, the Court of Appeals emphasized that the City's sick leave policy "neither prevents employees from taking FMLA leave nor discourages employees from taking such leave.  It simply ensures that employees do not abuse their FMLA leave." <u>Id.</u> at 120 (citations omitted).

Plaintiff insists that she was in fact on FMLA during the period in question, so she

evidently was not discouraged from taking FMLA leave by the City's sick leave policy. Here, the City's use and application of Directive 66 is consistent with Callison in that it "sets forth obligation of employees who are on leave, regardless of whether the leave is pursuant to the FMLA . . . [and ensures] that employees who are on leave from work do not abuse their leave, particularly those who enter leave while on the employer's Sick Abuse List." Id. at 120-21.

## CONCLUSION

Plaintiff was not discouraged from exercising her rights under the FMLA. Furthermore, Plaintiff was disciplined for her repeated failed sick checks during those absences. The City's sick leave policy, Directive 66, is consistent with and does not violate the FMLA. Thus the City did not abrogate Plaintiff's FMLA rights by suspending her for violating its sick leave policy while exercising her FMLA rights.

For the foregoing reasons, this Court will grant Defendant's Motion for Summary Judgment. An appropriate Order follows.